IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

**WILSON R. VASCONEZ,**

    **Plaintiff,**

**vs.**                                                                              No. 2:20-cv-02160-JTF-cgc

**LANGSTON COMPANIES, INC.,**

    **Defendant.**

---

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Before the Court is Defendant Langston Companies, Incorporated's ("Langston" or "Defendant") Motion for Summary Judgment (Docket Entry ("D.E.") #13). Pursuant to Administrative Order 2013-05[1], the instant motion has been referred to the United States Magistrate Judge for Report and Recommendation. For the reasons set forth herein, it is RECOMMENDED that Langston's Motion for Summary Judgement be GRANTED.

**I.  Procedural History**

    *a.  Plaintiff's Complaint & Service of Process*

On March 5, 2020, Plaintiff Wilson R. Vasconez ("Plaintiff") filed a *pro se* Complaint (D.E. #1) alleging discrimination on the basis of national origin (Ecuadorian) and retaliation in

---

[1] The instant case has been referred to the United States Magistrate Judge by Administrative Order pursuant to the Federal Magistrates Act, 28 U.S.C. §§ 631-639. All pretrial matters within the Magistrate Judge's jurisdiction are referred pursuant to 28 U.S.C. § 636(b)(1)(A) for determination, and all other pretrial matters are referred pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) for report and recommendation.

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000e, *et seq*.[2]  As of July 31, 2020, Plaintiff had not completed and returned any summon(es) for issuance and no proof of service had been made to the Court.  Thus, on that date, the Court entered an Order to Show Cause (D.E. #7) advising Plaintiff that he had failed to comply with Rules 4(l) and 4(m) of the Federal Rules of Civil Procedure and that he must show cause within fourteen days of the entry of that Order as to why the Magistrate Judge should not recommend to the District Court that his Complaint be dismissed without prejudice.

On August 14, 2020, Plaintiff filed a document entitled "Cause Shown" (D.E. #8).  Plaintiff states that he was supposed to pick up three blank summonses to complete and return for issuance but that, due to the COVID-19 pandemic, he was not able to do so because he believed the federal building to be closed to the public.  Plaintiff then registered with the Public Access to Court Electronic Records ("PACER") system with the intention to submit further documentation via electronic means but was not allowed to do so as a *pro se* party.  Plaintiff states that, on August 11, 2020, he called the Clerk's office and again requested the three blank summonses, which he received on August 14, 2020.  On September 21, 2020, a Summons in a Civil Action was issued to Langston.  (D.E. #9).  The summons was returned executed on October 2, 2020.  (D.E. #12).

---

[2]  Plaintiff Complaint alleges that he was subjected to two unwelcome comments during his employment.  First, on August 14, 2018, he advised Charles Harper ("Harper"), a white, American male salesperson that it was not safe to "wrap a lift of wire" by himself, to which Harper responded, "'an American would have done it.'" (*Id*. ¶ III.E.2).  Second, on March 25, 2019, Sales Operations Manager Steve Winston ("Winston"), a white, American male who is the "highest ranking site official," stated, "I thought they were going to handcuff you" after Plaintiff returned from a court matter pertaining to property ownership. (*Id*. ¶ III.E.4).  Plaintiff's allegations are not evidence that may be considered on a motion for summary judgment; however, these particular allegations are included herein to provide context to the evidence presented by Langston, which only alludes these incidents.

### b. *Langston's Motion for Summary Judgment*

On November 6, 2020, Langston filed the instant Motion for Summary Judgment. Langston argues that summary judgment is appropriate for the following reasons: (1) Harper's conduct was not "severe and pervasive"; (2) the PIP is not an adverse employment action; and, (3) Langston had legitimate nondiscriminatory nonretaliatory reasons for terminating Plaintiff's employment—namely, that Plaintiff intentionally deleted vital company information from his computer. Langston also filed its Statement of Undisputed Material Fact ("SUMF") as required by Local Rule 56.1(a) (D.E. #13-2) as well as a Declaration of Edward Langston (D.E. #13-3) ("Langston Decl.") and a Declaration of Justin Kelly (D.E. #13-4) ("Kelly Decl.").

Langston additionally argues that Plaintiff's Complaint should be dismissed for failure to timely effectuate service of process in accordance with Rule 4 of the Federal Rules of Civil Procedure and that, although this dismissal would normally be without prejudice, Plaintiff should not be permitted to refile his Complaint because he could not do so within Title VII's ninety-day filing requirement, 42 U.S.C. § 2000e-5. Although Langston has not designated its motion as a motion to dismiss for insufficient service of process pursuant to Rule 12(b)(5), it is RECOMMENDED that it be construed as such.

### c. *Plaintiff's Response to Langston's Motion for Summary Judgment*

Local Rule 56.1(b) provides that "[a] party opposing a motion for summary judgment must file a response within 28 days after the motion is served or a responsive pleading is due, whichever is later." It also requires the non-movant to "respond to each fact set forth by the movant" in the prescribed format with citations to the record. Plaintiff failed to do either.

3

On December 23, 2020, this Court issued its second Order to Show Cause advising Plaintiff that he had failed to comply with Local Rule 56.1 and must show cause within fourteen days of the entry of that Order as to why the Magistrate Judge should not recommend to the District Court that Plaintiff's Complaint be dismissed for lack of prosecution pursuant to Rule 41 of the Federal Rules of Civil Procedure and/or that Defendant's Motion for Summary Judgment be granted.  (D.E. #15).

Plaintiff responded to the Order to Show Cause on January 8, 2021.  (D.E. #16).  Therein, he stated that he has been "suffering of depression symptoms due to the [e]conomic hardship originated by the constant harassment, retaliation and consequent loss of his job at Langston Companies Inc.  This situation has resulted [in] reduction of levels of enjoyment of life, [s]tress, impairment of intellectual function shown by a failure of memory, disorientation, difficulties in comprehension, or learning capacity, alteration of mood, and a degree of delusional beliefs and [cognition] affecting the plaintiff's daily life, which threatens his mental health."  Plaintiff further states that he is "struggling to overcome the fear of legal confrontation" that he faces in prosecuting this action.  Plaintiff additionally requested an extension of time to respond to Defendant's Motion for Summary Judgment.

On January 11, 2021, Langston filed its Objections to Plaintiff's Response to this Court's Show Cause Order.  (D.E. #17).  Langston's Objections asserted that Plaintiff's Response is inaccurate, disingenuous, and fails to comply with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1(b).  Langston also argues that Plaintiff should not be granted additional time to respond to its Motion for Summary Judgment.

On February 9, 2021, the United States District Judge entered a Scheduling Order in the case and ordered Plaintiff to file a Response to Defendant's Motion for Summary Judgment by

February 19, 2021. (D.E. #20). Plaintiff again failed to do so. Instead, Plaintiff filed his Response to Defendant's Motion for Summary Judgment on February 22, 2021. (D.E. #26). Plaintiff's Response did not contain his response to Defendant's SUMF as required by Local Rule 56.1(b). Plaintiff subsequently filed a Response to Defendant's SUMF on March 9, 2021 (D.E. #30) and filed a second Response to Defendant's SUMF on March 10, 2021. (D.E. #32).[3]

### d. *Defendant's Reply*

On February 25, 2021, Langston filed its Reply to Plaintiff Response Opposing Defendant's Motion for Summary Judgment. (D.E. #27). Therein, Langston restates the reasons why it asserts summary judgment is appropriate. Additionally, Langston argues that the Plaintiff did not timely respond to its SUMF as required by Rule 56(c) of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules. Thus, Langston asserts that its Statement of Undisputed Material Facts should be deemed as admitted and that, as such, Plaintiff has failed to create a genuine dispute of material fact exists.[4]

---

[3] On March 17, 2021, Defendant filed its Objections to Plaintiff's Responses to Defendant's SUMF (D.E. #33). Defendant argued that the Court should not consider either filing because both are untimely and contain material that is not part of the record in the present case. On March 29, 2021, the Plaintiff filed an Answer to Defendant's Objection to Plaintiff Response to Defendant's SUMF. (D.E. 34). Neither of these filings are permitted by the Local Rules and will not be considered by the Court in its Report and Recommendation.

[4] On March 9, 2021, Plaintiff filed a Sur-Reply to Defendant's Motion for Summary Judgment (D.E. #29). On March 10, 2021, Plaintiff filed another document entitled "Plaintiff's Objection to Defendant's Reply to Plaintiff's Response Opposing Langston's Motion for Summary Judgment" (D.E. #31), which in effect is a second sur-reply. Local Rule 56.1 does not permit sur-replies to motions for summary judgment without leave of court. Accordingly, these two filings will not be considered by the Court in this Report and Recommendation.

**II.     Proposed Findings of Fact[5]**

General Manager Edward Langston first hired Plaintiff as a warehouse manager at Langston's West Memphis plant on October 8, 2012. (Langston Decl. ¶ 2-3). At the time he hired Plaintiff, he knew that he was Ecuadorian. (*Id*. ¶ 4). After Plaintiff's first full-year evaluation, he received a raise of approximately five percent. (*Id*. ¶ 5). Plaintiff voluntarily resigned from his position as warehouse manager with notice on September 30, 2014. (*Id*. ¶ 6).

Edward Langston later rehired Plaintiff as a warehouse manager at Langston's Memphis plant on March 23, 2015. (*Id*. ¶ 7). Since Justin Kelly ("Kelly") became Plant Manager on July 16, 2018, he had been having on-going conversations with Plaintiff about his job performance. These discussions included but are not limited to the following: (1) letting product sit outside on the dock for two days in September of 2018 when it should have been shipped immediately; (2) turning in his August 2018 inventory ten days late; (3) sending a shipment of yarn to the wrong customer; (4) shipping only 600 bags when the customer ordered 1000 bags; (5) having FedEx wait for over an hour because the paperwork was not complete and/or the product was not ready to be shipped; (6) shipping Best Vet's order to the Cooking Depo on December 17, 2018; and, (7) shipping pinto bean bags to Cargill instead of the trash bags it ordered. (Kelly Decl. ¶¶ 2, 4, 5, 6).

With respect to Harper's alleged statements to Plaintiff, Langston investigated Plaintiff's claim and cautioned Harper against any future similar comments. (Kelly Decl. ¶ 18). The day after the incident, Harper apologized to Plaintiff. (*Id*. ¶ 19). Following that incident, Plaintiff did

---

[5] Because Plaintiff failed to file a response to Defendant's SUMF, Local Rule 56.1(d) dictates as follows: "Failure to respond to a moving party's statement of material facts . . . within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment." Accordingly, it is RECOMMENDED that Langston's SUMF should be deemed undisputed.

not report any other statements or harassment by Harper, who has since retired. (*Id.* ¶ 20). Plaintiff never complained about Winston's alleged statement. (*Id.* ¶ 21).

Plaintiff was put on a PIP by Kelly on March 27, 2019. (*Id.* ¶ 7). The PIP set forth the following performance goals:

1. Work Hours: Your work hours expectations have been discussed with you several times in the past. As noted in past conversations with managers, your work hours were discussed. As a manager, it is imperative for you to be at work to hand out work instructions to your team. You cannot do this remotely, and it is expected that you work 42-50 hours each week depending on workload and peak seasons throughout the year.

2. Inventory: As a manager of the warehouse, it is expected that you own and manage inventory. You will work with the plant manager to create a management system that will create a more efficient way of counting inventory at month's end.

3. Customer Service: You as a manager must ensure that the customers are receiving their product in a timely manner. This happens by communication. It starts in the morning meeting at 9am to discuss production output and issues. Throughout the day, it is your responsibility to contact production to ensure that timelines are still on track and that all requested pieces of freight are shipped together.

4. Customer Service: Shipments are expected to be 100% accurate to avoid incurring unnecessary freight charges. During the thirty-day period and more specifically in the future as a whole, any shipments leaving the facility at Memphis, Tennessee must be accurate and shipped to the correct customer.

5. Receiving: All materials brought in as returns or as raw materials need to be accurately counted and going forward received as "uncounted" will be unacceptable. It is receiving's responsibility to ensure that an accurate count is given for billing/credit purposes.

6. Teamwork: At Langston, we are a team. We all succeed with teamwork, and it is expected that you and the warehouse department work with production and other departments to ensure qualify and efficiency are maintained or achieved. A lack of communication needs to stop and respect for each other must happen.

(*Id.* ¶ 8).

Plaintiff was absent from work on March 29, 2019—the day Langston had set aside for its year-end inventory. (*Id*. ¶ 12). In Plaintiff absence, Kelly searched Plaintiff's computer for vital information Langston needed to undertake its inventory. (*Id*. ¶ 13). Kelly discovered that Plaintiff had deleted this information. (*Id*. ¶ 14). At the time, Kelly also knew that the previous plant manager had issued Plaintiff a final written warning on April 3, 2018 for failing to obey his supervision's directions regarding accompanying the auditors at year-end inventory. (*Id*. ¶ 17). Kelly decided to discharge Plaintiff immediately on March 29, 2019 because Plaintiff's conduct breached his duty of loyalty to Langston. (Kelly Decl. ¶¶ 3, 9, 15 & 16; Langston Decl. ¶ 8). Edward Langston approved Kelly's termination decision. (Langston Decl. ¶ 9). Seven days later, Plaintiff filed his EEOC Charge. (Kelly Decl. ¶ 10). Langston's first notice of the Charge came on April 10, 2019. (*Id*. ¶ 11).

## II. Analysis and Proposed Conclusions of Law

### a. *Motion to Dismiss for Insufficient Service of Process*

Rule 12(b)(5) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed for insufficient service of process. Service of process is insufficient when a party has not complied with Rule 4(m) of the Federal Rules of Civil Procedure, which requires a defendant to be served within ninety days after the complaint is filed. *U.S. ex rel. Howard v. Life Care Centers of America, Inc.*, No. 1:03-CV-41, 2005 WL 2674939, at *1 (E.D. Tenn. Oct. 20, 2005). Rule 4(m) provides that, if a plaintiff fails to comply, the Court—"on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." However, Rule 4(m) further provides that, "[i]f the

8

plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

In deciding a motion to dismiss under Rule 12(b)(5), the Court may refer to evidence in the record to determine the sufficiency of service. *Metropolitan Alloys Corp. v. State Metals Indus., Inc.*, 416 F. Supp. 2d 561, 563 (E.D. Mich. 2006) (citing *Thompson v. Kerr*, 555 F. Supp. 1090, 1093 (S.D. Ohio 1982)). The party on whose behalf service of process was made has the burden of establishing its validity. *Metropolitan Alloys*, 416 F. Supp. 2d at 563 (citing *Shires v. Magnavox Co.*, 74 F.R.D. 373, 377 (E.D. Tenn. 1977)).

Here, Plaintiff did not serve Langston until 211 days after filing his Complaint. While Rules 4(m) and 12(b)(5) would permit a dismissal without prejudice, it may also determine that service may be permitted within a specified time. Although such an extension was never explicitly ordered, the Court has permitted Plaintiff to proceed with his case following his completion of service on October 2, 2020. Specifically, on February 9, 2021, the Court provided him an extension of time to respond to the instant motion and has entered a Scheduling Order in the case. Accordingly, while Plaintiff's Complaint could be dismissed pursuant to Rules 4(m) and 12(b)(5), it is RECOMMENDED, for the reasons set forth, *infra*, that Rule 56 provides the more appropriate basis for disposition of Plaintiff's Complaint at this stage.

### b. *Motion for Summary Judgment*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary

judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999), evidentiary material presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 2001). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998).

Once a properly support motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denies of [its] pleadings, but… must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

### *i.     Title VII Discrimination Claim*

First, Plaintiff alleges that he has suffered discrimination in violation of Title VII. Title VII provides that discrimination on the basis of race, color, religion, sex, or national origin constitutes an unlawful employment practice. 42 U.S.C § 2000e-2(a). A plaintiff may establish a discrimination claim by one of two means: (1) by introducing direct evidence of discrimination; or (2) by proving circumstantial evidence which would support an inference of discrimination. *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

Under the direct-evidence approach, a plaintiff must present evidence that, "if believed, required the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 2000). To successfully pursue a direct-discrimination claim, the evidence must establish, without any inferences or presumptions, that discriminatory motives caused the adverse employment action. *Nguyen v. City of Cleveland*, 229 F.3d 59, 563 (6th Cir. 2000); *see also Brack v. Shoney's Inc.*, 249 F. Supp. 2d 938, 947 (W.D. Tenn. 2003). If the plaintiff introduces evidence of an adverse employment action on the basis of his protected status, the burden of persuasion shifts to the employer to prove that it would have taken the adverse employment action even had it not been motivated by discrimination. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994).

Under the circumstantial evidence approach, the tripartite test established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), and later clarified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), applies to determine if the conduct violated

Title VII. First, a plaintiff must establish a prima facie case of discrimination, which requires: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently than similarly situated, non-protected employees. *DiCarlo v. Potter*, 385 F.3d 408, 415 (6th Cir. 2004).

If plaintiff establishes a *prima facie* case, a mandatory presumption of discrimination is created, and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employer's decision. *McDonnell Douglas*, 411 U.S. at 802. If the defendant meets this burden, then a plaintiff must prove that the reason proffered by the defendant is a pretext to hide unlawful discrimination. *Id.* The plaintiff may establish that the proffered reason is a mere pretext by showing that the stated reasons had no basis in fact, that the stated reasons were not the actual reasons, and that the stated reasons were insufficient to explain the defendant's actions. *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991). "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).

With respect to whether direct evidence of discrimination exists, Plaintiff has alleged that Harper made an inappropriate comment regarding his national origin. However, Plaintiff has failed to provide evidence of the substance of Harper's statement, and mere allegations do not suffice to counter a summary judgment motion. Further, there is no evidence that Harper was a decisionmaker at Langston; in fact, Plaintiff's own Complaint alleges that Harper was a salesperson. This is insufficient to establish direct evidence of discrimination. *See Syvongxay v. Henderson*, 147 F. Supp. 2d 854, 857 (N.D. Ohio 2001) (citations omitted) ("Discriminatory remarks may constitute direct evidence that discrimination played a role in an employment decision, but 'only if they are both made by the decisionmaker and related to the employment

12

decision at issue.'"). Accordingly, it is RECOMMENDED that there is no direct evidence that Plaintiff suffered discrimination on the basis of national origin in violation of Title VII.

With respect to whether circumstantial evidence of discrimination exists, Plaintiff must first demonstrate that he suffered an adverse employment action. Langston does not dispute either that Plaintiff was put on a PIP or that he was ultimately terminated. "While PIPs do not constitute adverse employment actions alone, a PIP that results in termination may constitute an adverse employment action." *Giron v. Tyco Electronics Corp.*, 762 Fed. Appx. 233, 237 (6th Cir. 2019) (citing *Kyle-Eiland v. Neff*, 408 Fed. Appx. 933, 941 (6th Cir. 2011)). Here, the undisputed evidence shows that the deletion of inventory data resulted in Plaintiff's termination—an act not addressed by or otherwise related to the PIP. However, even though the PIP does not constitute an adverse employment action in this case, it is well-settled that employment termination does constitute an adverse employment action, *see, e.g. Howington v. Quality Restaurant Concepts, LLC*, 298 Fed. Appx. 436, 442 (6th Cir. 2008) (citation omitted). As Langston has not argued that Plaintiff failed to meet the other three requirements of the *prima facie* case, the burden then shifts to it to articulate some legitimate, nondiscriminatory reason for his termination.

Langston has proffered that it terminated Plaintiff's employment because of his deletion of critical inventory data. Thus, as Langston has met its burden of articulating a legitimate, nondiscriminatory reason for Plaintiff's termination, Plaintiff must present evidence establishing a genuine issue of material fact exists as to whether this reason is pretextual. Plaintiff did not present any timely evidence whatsoever, and no evidence exists in the record suggesting that Langston's proffered basis for termination is pretextual. Accordingly, it is RECOMMENDED that the inquiry ends here and that Plaintiff's Title VII claim for discrimination on the basis of national origin fails as a matter of law.

### ii. *Title VII Hostile Work Environment*

Next, Langston has argued that Harper's statement did not constitute "severe and pervasive" conduct that is violative of Title VII. This is an inquiry that must be considered in analyzing a Title VII hostile-work-environment claim, which is distinct from a Title VII discrimination claim. *Franz v. Five Rivers MetroParks*, 254 F. Supp. 753, 758 (S.D. Ohio 2002) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002)).[6] Plaintiff's Complaint does not explicitly plead such a claim; however, as Langston has raised the argument that his Complaint could be so construed, it will be considered here.

A hostile work environment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted). To establish a *prima facie* case of a hostile work environment, a Plaintiff must demonstrate as follows: (1) that he is a member of a protected class; (2) that he was subjected to unwelcome harassment; (3) that the harassment complained of was based on his national origin; (4) that the harassment created a hostile work environment; and, (5) that the employer is liable. *Long v. Ford Motor Co.*, 193 Fed. Appx. 497, 501 (6th Cir. 2006) (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)).

Here, Plaintiff's Complaint alleged that Harper and Winston each made an unwelcome comment and that Harper's comment pertained to Plaintiff's national origin. However, as already

---

[6] Whether an individual is subjected to "severe or pervasive" harassment may also be considered in analyzing a Title VII retaliation claim, *see Randolph v. Ohio Dep't. of Youth Srvs.*, 453 F.3d 724, 736 (6th Cir. 2006) (citations omitted); however, Langston's Motion for Summary Judgment explicitly discusses whether conduct is "severe or pervasive" enough to constitute a hostile work environment.

set forth, *supra*, Plaintiff did not present any evidence of the substance of either statement, and none is in the record before this Court. Further, these two comments would not be sufficient as a matter of law to establish a hostile-work-environment claim. *See, e.g.*, *William Armstrong v. City of West Buechel*, No. 3:17-cv-260-DJH-CHL, 2019 WL 5558576, at *5 (W.D. Ky. Oct. 28, 2019) (citing cases). Accordingly, it is RECOMMENDED that, should the District Court construe Plaintiff's Complaint as raising a Title VII hostile-work-environment claim, such a claim fails as a matter of law.

### iii. Title VII Retaliation Claim

Finally, Plaintiff asserts that he suffered retaliation in violation of Title VII, which prohibits discrimination against an employee because that employee has engaged in conduct protected by Title VII. *See* 42 U.S.C. § 2000e-3(a). Plaintiff bears the initial burden to establish a *prima facie* case of retaliation, which requires that he demonstrate as follows: (1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) a causal connection existed between the protected activity and the materially adverse action. *Randolph*, 453 F.3d at 736 (citations omitted); *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (citations omitted). As with Title VII discrimination claims, if the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to offer a non-discriminatory reason for the adverse employment action. *Ladd v. Grand Trunk Wester R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009) (citing *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)). If the defendant meets this burden, it shifts back to the plaintiff to determine that the proffered reason was mere pretext. *Ibid*.

Plaintiff's Complaint alleges that he engaged in two protected activities—internally reporting Harper's comment pertaining to his national origin and filing an EEOC Charge. As to Plaintiff's reporting Harper's comment, while there is no evidence of the substance of the statement in the record, Langston's evidence establishes that it was aware of a comment made by Harper and that Langston investigated it consistent with its policy against discrimination. Such internal reporting constitutes protected activity. *Randolph v. Ohio Dep't. of Youth Srvs.*, 453 F.3d 724, 736 (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000)). Even so, as set forth, *supra*, Section III.b.i, Langston has proffered that its termination decision was based upon Plaintiff's deletion of inventory data, and Plaintiff has not put forth any evidence that Langston's proffered reason for termination is pretextual. This is insufficient to survive a motion for summary judgment.

As to Plaintiff's filing of the EEOC Charge, Plaintiff did so seven days after his employment was terminated. Langston did not become aware of Plaintiff's EEOC Charge until thirteen days after his employment was terminated. Protected activity that occurs after the adverse employment action cannot give rise to a claim of retaliation. Accordingly, it is RECOMMENDED that Plaintiff's Title VII retaliation claim fails as a matter of law.

### IV.     Conclusion

For the reasons set forth herein, it is RECOMMENDED that there are no disputed material facts, that Plaintiff has failed to produce evidence to support his case, that Langston is entitled to judgment as a matter of law, and that Langston's Motion for Summary Judgment be GRANTED.

IT IS SO ORDERED this 4th day of June, 2021.

> s/ Charmiane G. Claxton
> CHARMIANE G. CLAXTON
> UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**